M.I.F. SECURITIES COMPANY et al., Appellants, v R. C. STAMM & Co., Respondent.

First Department, June 16, 1983

**APPEARANCES OF COUNSEL**

*Judith B. Yaeger* of counsel (*Stephen R. Steinberg* with her on the brief; *Reavis & McGrath,* attorneys), for appellants.

*Peter R. Cella, P. C.,* for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

On or about July 1, 1981 petitioner M.I.F. Securities Company (MIF), a limited partnership, and respondent R. C. Stamm & Co. (Stamm), a general partnership, both engaged in the securities business, entered into an agreement whereby Stamm was to operate as a division of MIF under certain limited profit and expense sharing provisions. MIF was a member firm of the American Stock Exchange (Amex), while Stamm was not a member of Amex or any other securities exchange.

The agreement called for Stamm to "introduce" its securities and commodities business to MIF and clear its transactions through MIF's clearing agent, for which Stamm, as compensation therefor, was to be paid 60% of the net income received by MIF from the business generated by these accounts. Stamm would not share in either the profits or expenses arising from any other portion of MIF's business. MIF would provide Stamm with office space, market information dissemination devices, telephone lines to exchange floors and medical and life insurance for its employees. Stamm was to be responsible for its own accounts, any losses generated by those accounts, and various expenses associated with its business, including salary for its employees. The agreement did not contain any provision for the arbitration of disputes between the parties.

A few months after the agreement was executed a dispute arose over Stamm's clearing charges. When Stamm thereafter served MIF with a demand for arbitration before Amex, MIF sought a stay on the ground that the parties had not agreed to arbitrate (CPLR 7503, subd [b]). Finding that the applicable arbitration provision of the Amex constitution was "broad enough to cover the parties herein and their disputes", since "[u]nder the terms of the [a]greement between the parties, [Stamm], as a 'division' of MIF, is essentially a part, or a partner, of a member firm", Special Term denied the petition and granted Stamm's cross motion to compel arbitration. We disagree, and reverse.

In commercial transactions only an explicit and unequivocal agreement to use arbitration as the exclusive method of dispute resolution gives rise to an obligation to arbitrate. (*Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 512.) "The reason for this requirement, quite simply, is that by agreeing to arbitrate a party waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent" (*Matter of Marlene Inds. Corp. v Carnac Textiles*, 45 NY2d 327, 333-334). Thus, because of the nature of arbitration, where a party forfeits

the right to a trial, often before a jury, in a judicial forum bound by legal precedent and the rules of evidence, the decisions of which are subject to broad appellate review, an agreement to arbitrate "may not be implied or depend upon subtlety for its existence" (*Steigerwald v Dean Witter Reynolds, Inc.,* 84 AD2d 905, 906, affd 56 NY2d 621). Furthermore, and contrary to Stamm's argument, raised for the first time on appeal, it is a judicial responsibility, and not the arbitrator's, to decide the threshold question of whether the parties are bound by a valid agreement to arbitrate. (*Matter of County of Rockland [Primiano Constr. Co.],* 51 NY2d 1, 5; *Spectrum Fabrics Corp. v Main St. Fashions,* 285 App Div 710, 714, affd 309 NY 709.)

Section 1 of article VIII of the Amex constitution provides: "members, member firms, partners of member firms, member corporations and officers of member corporations shall arbitrate all controversies arising in connection with their business between or among themselves or between them and their customers as required by any customer's agreement or, in the absence of a written agreement, if the customer chooses to arbitrate." Thus, in becoming a member of Amex, MIF agreed to arbitrate disputes only with those entities expressly set forth in the applicable arbitration provision of the Amex constitution. Since Stamm is only a "division"* for which no provision for arbitration was made, MIF was entitled to a stay. Instead, Special Term, under a theory that Stamm enjoyed quasi-partnership status, and in disregard of well-accepted principles, expanded the explicit and unequivocal language of the arbitration provision to embrace this dispute.

Stamm was never either a general or limited partner of MIF, a New York limited partnership. As a creature of statute (see *Ruzicka v Rager,* 305 NY 191, 197; *Lanier v Bowdoin,* 282 NY 32, 38), a limited partnership must comply with the requirement for the filing of a certificate containing, *inter alia,* "[t]he name[s] and place[s] of residence of each member; general and limited partners being respectively designated." (Partnership Law, § 91, subd [1],

---

* MIF alleges that, although designated as such in their agreement, Stamm, in fact, never even became a division of it since it does not directly or indirectly own Stamm's assets or operate it as a separate unit.

par [a], cl [iv].) Partnership status in a limited partnership may not, therefore, be established by implication. Had Stamm become any type of partner in MIF, MIF's limited partnership agreement would have had to be amended and, under New York law, an amended certificate of limited partnership filed. (Partnership Law, § 113, subd [2], pars [c], [d].) This was not done. Moreover, under section 2 (d) (2) of article IV of the Amex constitution, "The Exchange shall not approve a firm as a regular or options principal member firm unless * * * every general partner in the firm is a regular, options principal or allied member of the Exchange." Stamm never registered under any of those categories.

More significantly, though, the relationship between Stamm and MIF did not have any of the customary indicia of a partnership. Whether partnership status is enjoyed turns on various factors, including sharing in profits and losses, exercising joint control over the business, and making capital investment and possessing an ownership interest in the partnership. (See, e.g., *Matter of Steinbeck v Gerosa,* 4 NY2d 302, 317-318, app dsmd 358 US 39; *Ramirez v Goldberg,* 82 AD2d 850, 852.) The agreement between MIF and Stamm shows that Stamm never enjoyed any partnership prerogatives, and certainly it had no obligation with respect to MIF's losses. Its involvement in MIF was strictly limited. In return for the clearing services, office space and employee fringe benefits provided by MIF, it paid MIF 40% of the net proceeds generated by its accounts.

Stamm's argument that its arrangement with MIF involved the intermingling of the business of both entities and the mutual sharing of risks and profits is belied by the agreement, which evidences an intention to keep the two entities distinct. The risks and losses of each entity are clearly segregated and confined to the entity from the business of which they arose. Both parties were at risk only with respect to their own business, and Stamm had no right to a portion of any profits or income generated by MIF's accounts. Moreover, the agreement specifically retained the individual identity of each entity by requiring Stamm to pay the salaries of its own employees, to pay for

separate Stamm stationery, to pay for its own separate telephone lines and to pay its own legal and accounting fees. Such an arrangement hardly infuses the relationship between MIF and Stamm with partnership or joint venture status. In any event, joint venture status is not recognized in the applicable arbitration provision of the Amex constitution.

Quite apart from the argument that it is a quasi-partner, Stamm also contends that the arbitration clause contained in the U-4 applications of some of Stamm's personnel for registration with Amex as MIF representatives requires MIF to arbitrate its dispute with Stamm. Stamm's two partners and an associate were required to register as representatives of MIF so that Stamm could clear its own trades through MIF's clearing agent. MIF sponsored these applications.

This argument is without merit. First of all, Stamm's personnel, even in their own individual capacities, do not have the right to compel MIF to arbitrate. By executing the U-4 applications Stamm's personnel agreed to arbitrate any disputes with MIF as is required by the Amex constitution or rules. The U-4 is apparently a standard form used by many stock exchanges whereby the applicant selects from among those listed the exchange with which he seeks registration. As its terms make clear the arbitration provision contained therein is a standard clause which only references the particular exchange rule to which it will apply: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitution, or by-laws of the organization with which I registered, as indicated in Question 8." Each exchange has its own mandatory arbitration rules which vary from exchange to exchange. Noteworthy in this regard are the rules of the New York Stock Exchange which require arbitration of "any controversy between a non-member and a member" (NY Stock Exch Const, art VIII, §§ 1, 2; NY Stock Exch Guide [CCH], 1071-2 [1980]). But absent a specific agreement to arbitrate, as is the case here, MIF's arbitration obligations are defined by the constitution and rules of Amex, the exchange with

which the two Stamm partners and their associates registered. And the Amex constitution does not require MIF to arbitrate with nonmembers such as Stamm, even if they are its registered representatives.

Moreover, even if the U-4 registration application obligated MIF to arbitrate with the Stamm personnel representatives, the status of Stamm's personnel as MIF's representatives and any agreements to arbitrate they might have are irrelevant, since none of the individuals is a party to the arbitration proceeding, the agreement out of which the dispute arose, or the dispute itself, all of which are solely between the two partnerships.

Stamm argues that there is no difference between the Stamm individuals and Stamm, the partnership, and that if MIF is obligated to arbitrate with any individual employee under his U-4 application, it is obligated to arbitrate with Stamm. The law, however, does not allow such facile interchange of identities. The jural rights of a partnership, as an entity, are separate and distinct from those of its partners and employees, as individuals. "[W]here an action on a partnership claim is brought, as it should be, in either the firm name or in the names of the individual members as *copartners,* the firm members sue in a capacity different from their capacity as individuals." (*Ruzicka v Rager,* 305 NY 191, 198-199, *supra.*) A partnership may not assert the claim of an individual partner (see *Calkins v Smith,* 48 NY 614), any more than an individual partner may assert the claim of the partnership (see *Kirschbaum v Merchants Bank of N.Y.,* 272 App Div 336).

Finally, the cases offered by Stamm for the proposition that Amex rules require arbitration (see, e.g., *Muh v Risher,* 38 NY2d 441; *Brown v Gilligan, Will & Co.,* 287 F Supp 766), involve controversies where both parties were members of Amex. Since nothing in the parties' agreement or in the Amex constitution compels arbitration the stay should have been granted.

Accordingly, the order and judgment, Supreme Court, New York County (SAXE, J.), entered December 3, 1982, which denied petitioners' application to stay arbitration, and granted respondent's cross motion to compel arbitration, should be reversed, on the law, with costs and dis-

bursements, the petition to stay arbitration granted and the cross motion to compel arbitration denied.

FEIN, J. (dissenting). I would affirm.

The construction placed on the U-4 application would render the arbitration clause contained therein meaningless and without purpose. The term "my firm" necessarily had to mean M.I.F. Securities Company (M.I.F.), the Amex member, not R. C. Stamm & Co. (Stamm), which was not a member. There could be no dispute between the individuals, as such, and M.I.F. Whatever their dispute with M.I.F., it encompassed disputes between M.I.F. and the collective entity Stamm, albeit Stamm was a partnership.

KASSAL, J. (dissenting). I am in accord with the conclusion reached at Special Term denying the petition and granting the cross motion to compel the parties to proceed to arbitration (CPLR 7503, subd [a]), albeit not for the reasons stated. I agree with the majority that the finding that respondent was a division of M.I.F. Securities Co. (M.I.F.) is insufficient to confer upon it the status of a quasi partner, as held by Special Term. However, the arbitration provision contained in section 1 of article VIII of the American Stock Exchange (Amex) constitution is sufficiently broad to compel arbitration under the circumstances of this case. The Amex constitution provides: "Members, member firms, partners of member firms, member corporations and officers of member corporations shall arbitrate all controversies *arising in connection with their business between or among themselves* or between them and their customers as required by any customer's agreement or, in the absence of a written agreement, if the customer chooses to arbitrate" (emphasis added).

I recognize that the arbitration provision is not as broad as that provided under the rules of the New York Stock Exchange, which require arbitration of "any controversy between a non-member and a member" (NY Stock Exch Const, art VIII, §§ 1, 2). However, I disagree with the majority in its limited interpretation of the relevant portions of the U-4 registration application. This form had been executed by all of the parties comprising the respondent, namely, the two partners, Robert Stamm and Janet Goldberg and the only employee of the partnership, Kath-

leen Nolan. Each of the three U-4 applications provides in clear and unmistakable language: "I agree to arbitrate any dispute, claim or controversy that may arise *between me and my firm,* or a customer, *or any other person,* that is required to be arbitrated under the rules, constitution, or by-laws of the organization with which I registered as indicated in Question 8" (emphasis added).

Each applicant, in completing the U-4 application, was registered with Amex and it is noteworthy that the applications were all submitted at the direction and under the sponsorship of appellant. They were all signed by petitioner and, subsequently, they were approved by Amex. As a result, both partners and the sole employee of respondent were accorded status as registered representatives of M.I.F. The clear import of the arbitration provision, contained in each U-4 application, included an agreement by each applicant to arbitrate any dispute, claim or controversy "between me and my firm", which would be not only the individual partners and employee of R. C. Stamm & Co., but also by the Stamm partnership, and the term "my firm" connotes the petitioner.

The majority overlooks that a partnership is not a legal entity and has no status separate and apart from the individuals who comprise the firm (Partnership Law, § 10; *Caplan v Caplan,* 268 NY 445; *Chemical Bank of Rochester v Ashenburg,* 94 Misc 2d 64). Unlike a corporation, which is an artificial "person" created by law and existing independently of the persons who control it, a partnership cannot be considered as separate from the persons comprising it and has no independent legal rights.

The scope of petitioner's obligation to arbitrate under its agreement with Amex is broad. In terms of the parties bound to arbitration, as set forth in the Amex constitution, the provision encompasses "members", "member firms" and "partners of member firms", which clearly includes petitioner. As to the subject matter covered, that, too, includes this dispute, which pertains to a division of commissions and is embraced in the language "in connection with their business". As to the extent of the other parties similarly bound, as set forth in the language "between or among themselves", it is clearly the intent of this very

comprehensive provision to require that members of Amex arbitrate all disputes involving themselves, their employees, other members and customers, whether or not there is any other agreement to arbitrate. This would also include all internal disputes involving the business of the members, such as here.

Accordingly, since the intention is to bind member firms and since the respondent, by its two individual members and only employee in their filed U-4 registration applications, have similarly agreed to be bound, the nexus between the two parties hereto is that both have agreed with Amex to arbitrate disputes or controversies.

*Ruzicka v Rager* (305 NY 191) and *Kirschbaum v Merchants Bank of N. Y.* (272 App Div 336), relied upon by the majority, have no bearing upon the issue before us on this appeal. In *Ruzicka,* the court was referring to the principle that, for purposes of pleading, where an action on a partnership claim was brought, the action could be commenced either in the firm name or in the name of the individual members as copartners. *Kirschbaum* stands for the similar principle that where an action is brought to recover on a partnership debt owing from a third party, the action must be brought on behalf of and for the benefit of the partnership and not by the individual partner, since the cause of action belongs to the partnership and not to one of its members.

This is essentially different from the issue before us in this case. Here, we have a situation where the only two partners and its only employee agreed to submit to binding arbitration "any dispute, claim or controversy that may arise" and included within the scope of arbitration, not only the individual signatory to the application, but also the partnership. Such an agreement, where all of the partners agreed to submit to arbitration a partnership claim or liability is authorized and binding upon the partnership (Partnership Law, § 20, subd 3). Inasmuch as each of the partners agreed to submit to binding arbitration any dispute or controversy that might arise, there is sufficient in the record to conclude that there existed an agreement for arbitration under the circumstances of this case. This is particularly so in the face of the broad and general arbitra-

tion clause so that the function of the court, upon an application to stay arbitration, is limited to "perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration." (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Amer.*, 37 NY2d 91, 96; see, also, *Matter of Weinrott* [*Carp*], 32 NY2d 190, 198; *Matter of Prinze* [*Jonas*], 38 NY2d 570, 576-577.)

Accordingly, the order, Supreme Court, New York County (DAVID B. SAXE, J.), entered December 3, 1982, denying petitioners' application to stay arbitration and granting respondent's cross motion to compel arbitration, should be affirmed.

ROSS and MILONAS, JJ., concur with SULLIVAN, J. P.; FEIN and KASSAL, JJ., each dissent in separate opinions.

Order and judgment, Supreme Court, New York County, entered on December 3, 1982, reversed, on the law, the judgment vacated, the petition to stay arbitration granted and the cross motion to compel arbitration denied. Appellants shall recover of respondent $50 costs and disbursements of this appeal.