The LEONARD PARTNERSHIP, A Partnership consisting of Walter Leonard, David Leonard, Robert Leonard, Bertha Miller and Donna Dimick, Plaintiffs,

v.

TOWN OF CHENANGO, Defendant.

TOWN OF CHENANGO, Third–Party Plaintiff,

v.

George MALCHAK d/b/a Malchak Garbage Service and Malchak Salvage Co., Inc., Third–Party Defendants.

George MALCHAK d/b/a Malchak Garbage Service and Malchak Salvage Co., Inc., Fourth–Party Plaintiffs,

v.

BROOME COUNTY and Chenango Forks Board of Education, Fourth–Party Defendants.

No. 88–CV–0065.

United States District Court, N.D. New York.

Dec. 3, 1991.

Daniel L. Gorman, Binghamton, N.Y., for plaintiffs.

Whiteman Osterman & Hanna, Buffalo, N.Y., for defendant and third-party plaintiff (John T. Kolaga, of counsel).

Manes Rifken Frankel & Greenspan, Syracuse, N.Y., for third–party defendant and fourth-party plaintiff (Sidney Manes, of counsel).

Hogan & Sarzynski, Binghamton, N.Y., for fourth-party defendant Chenango Forks Bd. of Educ. (Edward Sarzynski, of counsel).

Robert G. Behnke, Broome County Dept. of Law, Binghamton, N.Y., for fourth-party defendant Broome County.

Donald G. Walls, Binghamton, N.Y.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

In September, 1990, the court heard oral argument on defendant's motion for summary judgment and for Rule 11 sanctions. Following oral argument, the court reserved decision and requested that the parties provide additional briefing on the due process claim. Thereafter, the parties engaged in extensive settlement negotiations. At the parties' request, the court agreed to hold this motion in abeyance pending the outcome of the settlement negotiations. Despite serious efforts, the case could not be settled. The court was so advised in March, 1991, when the parties asked the court to finally decide this outstanding motion. Following constitutes the court's decision in this regard.

### BACKGROUND

This is a somewhat factually complicated case in that it involves a subdivision application to a town planning board, and a subsequent application for a building permit. Therefore, in an effort to place the legal issues raised by defendant's motion into the proper factual context, the court will first provide a general discussion of

the relevant facts. Then, facts specific to a given cause of action will be discussed in greater detail in the section pertaining to that cause of action.

In July, 1986, plaintiff The Leonard Partnership ("the partnership"),[1] a family partnership, submitted a subdivision application to the Planning Board ("the Board") for defendant and third-party plaintiff, the Town of Chenango ("the Town").[2] According to the Town, certain questions arose during the application review process pertaining to the nature of the water and sewer services to be provided to the proposed subdivision. Those questions had to be answered by the partnership prior to the final stages of the subdivision application procedure.

In October, 1986, the Town Engineer recommended that public water be required.[3] One month later the Broome County Department of Planning and Economic Development recommended that the Town withhold its approval of the subdivision application until questions regarding water and sewer services were resolved.[4] Apparently in an attempt to answer some of those concerns, Dobbs Engineering Firm, P.C. ("Dobbs"), the engineering firm retained by the partnership in connection with this project, informed the Board that the partnership planned to use septic sewer systems in the proposed subdivision.[5] Dobbs further advised the Board that its original plan to use individual wells had been rejected by the Broome County Department of Health ("DOH").[6] In addition, Dobbs reported to the Board that "[w]e will have public water, . . . ."[7] Evidently that response did not satisfy either the Town Planning Board or the Broome County Planning Board; nor did it satisfy the DOH. Thus, primarily out of a concern over the water and sewer systems, the Town Planning Board did not take any further action regarding the subdivision application. The Town Planning Board was awaiting additional submissions from the partnership, as well as for comments from other government agencies.[8]

In February, 1987, the DOH notified the Town Engineer that "[i]nstallation of public water will be a requirement of this Department" because of the proximity of the subdivision property to the Town landfill.[9] One of the reasons given for the public water requirement was DOH's belief that a water septic system based upon 45 individual wells adjacent to the landfill might result in the migration of contaminants from the landfill to the subdivision property and into the groundwater thereunder.[10] The DOH believed that public water was "readily accessible" and could be easily extended to the partnership's property because of the Town's plan to extend public water to serve another development near the partnership's property.[11] In addition to the public water requirement, a Senior Public Health Engineer for DOH also informed the Town Engineer of the necessity of developing a "comprehensive

---

1. That partnership is comprised of the following individuals: Walter Leonard, David Leonard, Robert Leonard, Bertha Miller, and Donna Dimick.

2. It is interesting to note that nowhere in the extensive documentation (some of it duplicative) provided to the court is there a copy of this initial subdivision application. In their Rule 10(J) Statement plaintiffs do admit, however, that they submitted a subdivision application to the Town in July, 1986. *See* Plaintiffs' Response to the Statement of Material Facts at ¶ 1. In addition, there are two documents presently before the court which substantiate that a subdivision application was in fact submitted by the partnership in the summer of 1986. *See* Affidavit of Edwin C. Gent (July 18, 1990), Ex. B thereto at 1; and Letter of John Kolaga to Court (September 12, 1990), attachment thereto.

3. Gent Affidavit at ¶ 7.

4. *Id.* at ¶ 10.

5. *Id.* at ¶ 11.

6. *Id.*

7. *Id.* at ¶ 16 and Ex. K thereto; Affidavit of Donald G. Walls (July 18, 1990) at ¶ 10, and Ex. G thereto.

8. Gent Affidavit at ¶¶ 17 and 19.

9. Affidavit of Anthony Mastrangelo (June 28, 1990), Ex. A thereto.

10. *Id.* at ¶ 4.

11. *Id.*

sewage plan for the entire area including existing houses...."[12] In March, 1987, David Leonard, one of the partners in the partnership, applied for and was issued individual sewage specifications with a private well for the construction of a single family dwelling on the subject property.[13] The DOH engineer, claims, however, that the issuance of those individual sewage specifications by the DOH was erroneous because when David Leonard applied for those specifications, he failed to inform DOH that the lot was part of the subdivision property near the landfill.[14] As a result, the DOH engineer wrote the Town's Ordinance Officer recommending that the building permit for this property be withheld.[15] He also indicated that DOH would not issue any further individual sewage specifications.[16] In DOH's view, the application for the single family residence was simply a means to circumvent DOH's public water requirement.

On April 27, 1987, David Leonard then applied for a building permit to construct a single family house with attached garage on the subject property.[17] On May 11, 1987, the Town's Ordinance Officer denied that application stating that the application was "incomplete" in that it was not accompanied by a site plan; nor had Mr. Leonard obtained the DOH's approval for water supply and septic systems.[18]

Plaintiffs then commenced this lawsuit in January, 1988, alleging six causes of action. The first cause of action is brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et*

*seq.* The second, third and fourth causes of action are based upon the New York State law of public nuisance. The fifth cause of action seeks restitution under New York State law on a theory of unjust enrichment. Finally, in the sixth cause of action plaintiffs allege that the Town has taken their property without just compensation and violated their due process rights.

The Town advances a number of reasons as to why each of those causes of action must fail as a matter of law. The court will first consider the federal claims because if the Town is entitled to summary judgment dismissing those claims, the court will in all likelihood not be inclined to entertain the remaining pendent state claims.

## DISCUSSION

### I. CERCLA Cause of Action

With respect to the CERCLA cause of action, basically plaintiffs allege that the Town's municipal landfill, directly adjacent to their property, is contaminated with hazardous substances, which have been released from the site and have damaged their property. Plaintiffs further allege that they have incurred "substantial expenses and response costs" to "assess the damages to natural resources and to the ground water...."[19] In an attempt to determine the exact nature and extent of this broadly stated CERCLA claim, the Town served two sets of interrogatories upon plaintiffs.

In the first set, the Town specifically asked plaintiffs to list and describe in detail

12. *Id.* at ¶ 5, and Ex. A thereto.

13. *See* Affidavit of Ronald J. Keiberl (May 30, 1990) at ¶ 2, and Ex. A thereto.

14. Keibel Affidavit at ¶¶ 2–4 and Mastrangelo Affidavit at ¶ 7.

15. Keibel Affidavit, Ex. A thereto.

16. *Id.*

17. *Id.,* Ex. C thereto.

18. *Id.*
 In his affidavit, Mr. Keibel avers that the denial was, in part, because the application did

not include a "valid site plan drawn to scale ...;" *id.* at ¶ 7, yet the denial itself states only that "no site plan" was provided. *Id.,* Ex. C thereto.

19. Complaint at ¶ 28.
 Attached to the affidavit of John Kolaga, defense counsel, are numerous exhibits, such as the complaint, submitted in connection with these motions and some of these exhibits themselves contain additional exhibits. To simplify matters, rather than referring to those exhibits by letter as part of the affidavit of Mr. Kolaga, they will be referred to by name.

expenses incurred with respect to the subject property.[20] Along those same lines, the Town asked plaintiffs to provide it with detailed information concerning any tests or studies conducted upon the property.[21] Plaintiffs responded that they had incurred engineering fees in the amount of $3,123.66.[22] Plaintiffs further responded that, "legal fees and engineering fees are accruing." [23] When asked to describe in "detail" the reasons for those expenses, plaintiffs simply responded: "Engineering fees to develop property; others are self-explanatory." [24]

The Town then requested documentary evidence relating to those expenses.[25] In response, plaintiffs provided an invoice from their engineering firm indicating that its "fee for consulting engineering services rendered" as of November 2, 1986 was $3,623.66, and that a retainer had been paid in the amount of $500.00.[26] Plaintiffs also produced a copy of a check in the amount of $500.00 made payable to their engineering firm.[27] Plaintiffs produced what appears to be a receipt indicating a payment to Dobbs Engineering; the amount paid appears to be $3,123.66.[28] Plaintiffs admit, however, that as of October 27, 1988, no hydrogeological tests or studies had been undertaken; nor had any independent lab tests been performed.[29] (Presumably that is still plaintiffs' position, because they have never supplemented those answers to interrogatories.) Plaintiffs' engineering firm did consider an alternate water supply system ("AWS"), though.[30]

The Town contends that plaintiffs' CERCLA cause of action is defective because they have not incurred costs due to the alleged release or threatened release of hazardous substances, as required under the statute. The Town further contends that even if this court finds that plaintiffs have incurred that type of costs, their CERCLA claim must, nonetheless, fail because such costs clearly do not constitute "response" costs within the meaning of 42 U.S.C. § 9607(a)(4) (West Supp.1991). Finally, the Town asserts that any costs allegedly incurred by plaintiffs are not recoverable because such costs are not consistent with the national contingency plan, as § 9607(a)(4)(A) requires. Thus, the Town asserts, summary judgment must be granted dismissing plaintiffs' CERCLA cause of action. In the alternative, the Town moves for a declaratory ruling that any recovery by plaintiffs on their CERCLA claim be limited to an amount not to exceed $500.00—the amount the Town believes plaintiffs are claiming as response costs in their answers to interrogatories.

It is very difficult, in fact nearly impossible, to discern from their papers exactly what plaintiffs' position on this issue is, except to say that, not surprisingly, that they contend that they have and will incur CERCLA response costs. Plaintiffs simply make the bald assertion that "[t]here are 'response costs.' …;" yet they do not specify in their memorandum of law or elsewhere what they believe those costs to

20. The Town of Chenango's First Set of Interrogatories and Related Document Requests to The Leonard Partnership ("First Set of Interrogatories") at 14, ¶ 9(a)–(c).

21. *Id.* at 21–22, ¶ 21(a)–(d).

22. Answer to Defendant Town of Chenango's First Set of Interrogatories ("Answers to First Set of Interrogatories") at 3, ¶ 9(a).

23. *Id.*

24. *Id.* at 3, ¶ 9(b).

25. First Set of Interrogatories at 14, ¶ 9(c).

26. Answers to First Set of Interrogatories, Ex. C thereto (copy of invoice).

27. The Leonard Partnership's Answers to the Town of Chenango's Second Set of Interrogatories and Related Document Requests ("Answers to Second Set of Interrogatories"), attachments thereto.

Although not critical to a resolution of this motion, the court is somewhat troubled by the fact that it was only provided with a copy of the front of that check, and therefore was unable to verify endorsement.

28. The copy provided to the court is so faint that the exact amount is extremely difficult to discern.

29. Answers to First Set of Interrogatories at ¶ 21(a).

30. *Id.*

be.[31] Plaintiffs also make the statement, unsupported by any legal authority, that "Studies and reports by experts to accomplish remedial action are also recoverable costs."[32] More importantly, though, is that plaintiffs did not submit any proof on this motion establishing that they incurred any such costs. Lastly, plaintiffs are apparently also seeking to recover for the cost of obtaining an AWS. Plaintiffs contend that with respect to that cost, summary judgment is not appropriate because a factual issue exists as to whether there is a threat to the water supply.

### A. Response Costs

#### 1. Attorneys' Fees

The first issue pertaining to the CERCLA claim is whether plaintiffs are entitled to recover attorneys' fees as a response cost thereunder. Plaintiffs did not bother to address this issue. It is not entirely clear from their answers to interrogatories whether plaintiffs are even seeking to recover their attorneys' fees as a CERCLA response cost. That uncertainty arises from the fact that when first asked about expenses incurred in "connection with the operation" of the subject property, plaintiffs responded, "[l]egal fees ... are accruing."[33] When specifically asked about response costs, however, in that same set of interrogatories, plaintiffs did not specify attorneys' fees as such a cost.[34] In response to the Town's second set of interrogatories, plaintiffs also did not identify attorneys' fees as a response cost.[35] Given those responses and plaintiffs' failure to address this issue in their memorandum of law, it appears to the court that plaintiffs are not seeking attorneys' fees as a CERCLA response cost. Nonetheless, in the event that assumption is wrong, because the Town has raised this issue in its motion papers, the court will fully address it.

■ There is a split of authority as to whether attorneys' fees are recoverable as

a response cost under CERCLA. *See In re Hemingway Transport, Inc.*, 126 B.R. 656, 663 (D.Mass.1991) (and cases compiled therein); *see also State of New York v. SCA Services, Inc.*, 754 F.Supp. 995, 1000 (S.D.N.Y.1991) (striking portions of counterclaims seeking attorneys' fees under CERCLA). This court is convinced, however, that the more sound view is that attorneys' fees are not recoverable as response costs under CERCLA. The court finds persuasive the reasoning in *Hemingway*, wherein the court explained:

> A careful review of the statute persuades me that the costs of litigation are not recoverable by a private litigant. I start with the general principle that "[A]bsent explicit Congressional authorization, attorneys' fees are not a recoverable cost of litigation." *Runyon v. McCrary*, 427 U.S. 160, 185, 96 S.Ct. 2586, 2602, 49 L.Ed.2d 415 (1976). CERCLA provides no such explicit authorization. The statute elsewhere specifically provides that the *government* can recover legal costs, 42 U.S.C. § 9604(b) (1988), but fails to extend that right to private parties. Nor can private litigation expenses be considered recoverable "enforcement activity" within the meaning of the statute; while 'plaintiffs may bring an action for recovery of response costs, they may not bring an action to enforce CERLCA's cleanup provisions against another private entity.'....

*Id.* (citation omitted) (emphasis in original). That reasoning is consistent with the court's position in *Regan v. Cherry Corp.*, 706 F.Supp. 145 (D.R.I.1989). The *Regan* court, in discussing Congress' failure to amend § 107 to allow reimbursement of attorneys' fees in response cost suits, stated:

> If Congress had intended to permit citizens seeking response costs to recover their attorney fees, it would simply have

---

**31.** Plaintiffs' Memorandum of Law at 24.

**32.** *Id.*

**33.** Answers to First Set of Interrogatories at 3, ¶ 9(a); First Set of Interrogatories at ¶ 9(a).

**34.** *Id.* at 5, ¶ 22.

**35.** *See* Answers to Second Set of Interrogatories at ¶¶ 9 and 10.

amended § 107 to allow the recovery of these litigation costs. SARA [the Superfund Amendments and Reauthorization Act of 1986] was a comprehensive overhaul of CERCLA. Therefore, it would have been a simply [sic] matter to amend § 107 to allow recovery of attorney fees. *Id.* at 149. Congress did not enact such an amendment, however. Thus, based upon the foregoing, insofar as plaintiffs are seeking to recover attorneys' fees as a CERCLA response cost, the Town's summary judgment motion must be granted with respect to that aspect of the CERCLA claim.

2. Engineering Fees/"AWS"

In *Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269 (D.Del.1987), *aff'd,* 851 F.2d 643 (3rd Cir. 1988), a case properly relied upon by the Town, the court recognized that, "[t]he cases firmly establish that the incurrence of response costs is an essential element of a prima facie case under section 107(a)." *Artesian Water,* 659 F.Supp. at 1285 (and cases cited therein). Although the term "response cost" is not expressly defined in CERCLA, *id.* at 1286 n. 28, "response" is defined as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25) (West Supp.1991). The statutory definition of "removal" includes "the cleanup ... of released hazardous substances from the environment." 42 U.S.C. § 9601(23) (West Supp.1991).

■ Based upon the record as it is now constituted, clearly plaintiffs have failed to meet their burden on this summary judgment motion; that is, they have failed "[t]o make a showing sufficient to establish the existence of an element essential to [their] case...." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Namely, plaintiffs did not submit any proof establishing that they have incurred recoverable response costs

under CERCLA. As set forth above, the only evidence plaintiffs have produced regarding alleged response costs is, as the Town points out, the costs they incurred as part of their subdivision application.

As the Town persuasively notes, there is simply "no relationship whatsoever" between plaintiffs' claimed response costs and their CERCLA claim.[36] The engineering fees were incurred solely in connection with plaintiffs' application to subdivide and develop the subject property. For example, the Town Code explicitly requires that a subdivider must submit to the Planning Board a "proposed sanitary sewer and water supply plan."[37] Moreover, plaintiffs have not come forth with any evidence even tending to establish that those engineering costs were somehow related to CERCLA response costs. Indeed, plaintiffs themselves characterize those costs as "engineering fees to develop property."[38] The costs plaintiffs have incurred are no different than any person would expect to incur when seeking to subdivide property in the Town of Chenango. It would be ironic, to say the least, if all subdivision applicants could recover under CERCLA costs normally incurred with respect to processing a subdivision application.

■ Finally, plaintiffs are apparently claiming that they have or will incur response costs relating to an AWS. While it is true that under certain circumstances an AWS is considered to be a recoverable CERCLA response cost,[39] there is nothing before the court demonstrating what portion, if any, of the engineering fees charged to plaintiffs were related to either the study of an AWS, or the actual cost of acquiring such a system. Although plaintiffs claim that they incurred $500 in costs for an engineering study, which considered an AWS,[40] the invoice simply states "fee for consulting engineer services ren-

---

**36.** Defendants' Memorandum of Law at 23.

**37.** Gent Affidavit, Ex. A thereto (Town Code at § 62–8(A)(11)).

**38.** Answers to First Set of Interrogatories at 3, ¶ 9(b).

**39.** *See Artesian Water,* 851 F.2d at 651.

**40.** Answers to Second Set of Interrogatories at 3, ¶ 7(a).

dered."[41] And coincidentally, that invoice also shows that $500.00 was paid as a "retainer."[42] There is certainly no mention of an AWS on that invoice. Likewise the copy of the check made payable to plaintiffs' engineering firm, and the receipts for payments thereto, state only that those payments were for "engineering fees."[43] Consequently, there is absolutely no proof before the court that the engineering fees which plaintiffs have incurred to date relate to the AWS.

It should be noted that in his affidavit, plaintiffs' attorney states that plaintiffs "will be required to incur $175,000 in response cost for *development* of an alternate water supply...."[44] The record before the court on this motion, however, is completely devoid of any proof showing: (1) that plaintiffs have actually incurred such costs and (2) that the alleged necessity of such study or system is as a result of the release or the threatened release of hazardous substances. Furthermore, the Town Code appears to require a plan for an AWS as part of a subdivision application.[45] Therefore, as with the other claimed engineering costs, these costs, if any, were or would simply be a part of the subdivision application—*not* part of any alleged CERCLA response, as plaintiffs would like this court to conclude.

Having determined that plaintiffs' CERCLA cause of action is lacking because of a failure to demonstrate that they have incurred recoverable response costs, the court need not consider whether the alleged costs are consistent with the national contingency plan. Nor does the court need to address the Town's alternative argument for a declaratory ruling. Plaintiffs' complete failure in meeting their burden of establishing an essential element of a CERCLA claim—the incurrance of recoverable response costs—requires that the Town's summary judgment motion on that claim be granted in its entirety.

## II. Unconstitutional Taking

The parties recently entered into a Stipulation and Order of Dismissal pursuant to Fed.R.Civ.P. 41(a)(2) with respect to plaintiffs' sixth cause of action, insofar as that action is based upon an unconstitutional taking of property in violation of the fifth amendment. That stipulation renders moot the Town's summary judgment motion on this particular claim.

## III. Due Process

Even though that stipulation and order of dismissal related primarily to the taking claim, it is relevant in determining the scope of the due process claim presently before the court. That stipulation stated:

It is also understood and agreed between the parties that this stipulation does not dismiss Plaintiff's sixth cause of action to the extent that it alleges a constitutional claim *arising out of Defendant's denial of a building permit on May 11, 1987, or other cause of action for failure to issue a building permit*, if any.

Stipulation and Order of Dismissal With Prejudice of Sixth Cause of Action for Unconstitutional Taking of Property Without Due Process (October 3, 1991) at 2 (emphasis added). Based upon that explicit language, the court will go on to consider the due process claim only insofar as it is based upon the denial of a building permit. The court notes that originally plaintiffs were also pursuing a due process claim based upon the Town's alleged failure to

---

**41.** Answers to First Set of Interrogatories, Ex. C thereto (copy of engineering invoice).

**42.** *Id.*

**43.** Answers to Second Set of Interrogatories, attachments thereto.

**44.** Affidavit of Daniel Gorman (September 4, 1990) at ¶ 52 (emphasis added).

**45.** The Town Code provides, in relevant part:

The subdivider shall submit two (2) copies of a preliminary layout of the proposed subdivision to the Secretary of the Planning Board. The preliminary layout shall be drawn to scale ..., showing or accompanied by the following information: ....

The proposed sanitary sewer and water supply plan.... This plan shall include a feasible study comparing on-site versus a community system for both sewage and potable water.

Gent Affidavit, Ex. A thereto at § 62-8(A)(10).

follow state statutory condemnation procedures. Given the plain language of the stipulation, however, and plaintiffs' subsequent letter brief on the due process claim (which focuses solely on the denial of the building permit), plaintiffs have apparently abandoned that aspect of their due process claim. Thus, the court will only analyze the due process claim insofar as it relates to the denial of the building permit.

### A. Standing

Before turning to the merits of the due process claim there is one point raised by the Town which cannot be ignored, because it is a jurisdictional limitation, and that is the issue of standing. In fact, the Second Circuit has expressly disapproved of district courts assuming standing *arguendo* and proceeding to a consideration of the merits. *See Santos v. District Council of New York City & Vicinity of United Brotherhood of Carpenters & Joiners*, 547 F.2d 197, 199 (2d Cir.1977). In stating its disapproval with that practice, the Court stated, "[i]t is axiomatic that a court should not consider the merits of an action if the plaintiff cannot show some cognizable injury." *Id.* (citing *Ashwander v. TVA*, 297 U.S. 288, 347–48, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)). Heeding the Second Circuit's implicit instruction in *Santos*, this court will first address the standing aspects of the partnership's due process claim.

The Town asserts that because only David Leonard submitted the building permit application, which was denied, only he has standing to challenge the denial of that permit.[46] Therefore, argues the Town, any due process claims asserted by the other plaintiffs must be dismissed because they lack standing to assert such claims.[47] The court cannot thoroughly address the Town's standing argument, however, without first determining exactly who the plaintiffs are in this action, and in what capacity they are suing. The determination of the capacity to sue is a different concept than is standing.[48]

Unfortunately the complaint is ambiguous in this regard. The caption in the complaint describes the plaintiffs as follows: "The Leonard Partnership, a Partnership consisting of Walter Leonard, David Leonard, Robert Leonard, Bertha Miller, and Donna Dimick."[49] Nowhere else in the complaint is the partnership referred to by name; nor are any of the copartners referred to by name in the body of the complaint. Therefore, it is impossible to tell from the face of the complaint whether the partnership is the only plaintiff; or whether the plaintiffs consist of the partnership and the copartners solely in that capacity; or whether the plaintiffs are the partnership, and the individual copartners in that capacity, as well as in their individual capacities.

The Town's standing argument appears to be premised on this last scenario; and the court agrees that under the relevant law that is the only logical interpretation. In reaching that conclusion, the court starts from the rule that generally a partnership's capacity to sue or be sued is determined by the law of the state in which the district court sits. Fed.R.Civ.P. 17(b)(1). Therefore, New York law governs the capacity of this partnership to sue, and New York law expressly allows for a partnership to sue or to be sued in the partnership name. N.Y.Civ.Prac.Law & R. § 1205 ("CPLR") (McKinney 1976). Clearly then The Leonard Partnership did properly bring this action on behalf of the partnership in its own name.

> The concept of legal personality is to be distinguished from the concepts of standing and capacity. Standing focuses primarily upon the relationship between a person and a legal claim.... Capacity, as normally used, connotes capacity to engage in legal transactions or to obtain judicial relief.
> *Id.* at 948 (citation omitted).

---

**46.** Defendant's Letter Brief (March 4, 1991) at 2, n. 2.

**47.** *Id.*

**48.** In *Motta v. Samuel Weiser, Inc.*, 598 F.Supp. 941 (D.C.ME.1984), *aff'd on other grounds,* 768 F.2d 481 (1st Cir.), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985), the court cogently explained the distinction between those two concepts:

**49.** Complaint at 1.

In what capacity the individuals named in the caption are suing is more puzzling. Based upon the just stated rule that a partnership can sue in its own name, without naming the partnership members, it must be that the named copartners are also suing in their individual capacities, separate and apart from their capacity as copartners. Any other reading of the complaint would render the reference to the individuals surplusage, in light of CPLR § 1205; because under that rule there is no requirement that a plaintiff partnership also name as plaintiffs its member partners.

■ Now, having ascertained exactly who the plaintiffs to this action are, and in what capacity they are suing, the court can consider the Town's standing argument. When standing is an issue, the fundamental inquiry is whether the plaintiff is the proper party to assert the claim. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). While the court is aware that standing is generally a matter of federal rather than state law, under the circumstances, the court would be remiss if it did not consider the effect of the applicable state partnership law on this issue. *See City Communications, Inc. v. Detroit*, 888 F.2d 1081, 1086 (6th Cir.1989).

■ With respect to the partnership itself, the only way it could have standing to assert a due process claim based upon the denial of the building permit is if David Leonard submitted that building permit on behalf of the partnership jointly. That is so because under New York law, an individual partner may not assert the claim of the partnership. *M.I.F. Secur. Co. v. R.C. Stamm & Co.*, 94 A.D.2d 211, 216, 463 N.Y.S.2d 771, 775 (1st Dep't), *aff'd in part*, 60 N.Y.2d 936, 471 N.Y.S.2d 84, 459 N.E.2d 193 (1983). There is nothing in the record

as it is presently constituted, however, to support such a finding; that is that when he submitted the building permit, David Leonard was acting as a copartner on behalf of the partnership.

The complaint alleges that "plaintiffs" requested a building permit on April 27, 1987, and that a building permit was not issued to "plaintiffs." [50] The documentary evidence before the court, in the form of the building permit application,[51] does not support that assertion, however. That application is signed by David M. Leonard, Jr. and his title on the application is listed as "owner-contractor." [52] There is absolutely no mention on the face of that application that Mr. Leonard was seeking the permit in any capacity, other than as an individual. There is no mention or reference to the partnership. Nor is there anything in the record stating, or from which the court could infer, that David Leonard had authority to act on behalf of the partnership with respect to that building permit application.[53] Thus, because the record does not support a finding that David Leonard was seeking the building permit on behalf of the partnership, the court is convinced that insofar as the complaint alleges a cause of action by the partnership based upon a denial of the building permit, that cause of action must be dismissed for lack of standing.

As an aside, the court observes that the building permit application submitted by David Leonard pertained to one single family dwelling. Therefore, the seeking of a building permit for a single family dwelling is arguably inconsistent with seeking a permit on behalf of the partnership which is engaged in a subdivision development. So, the court concludes that The Leonard Partnership cannot assert any due process

---

**50.** Complaint at ¶¶ 66(d) and 67.

**51.** *Id.* at ¶ 67.
 The application also contains the denial and is attached to the complaint as exhibit B and is part of the record on these motions.

**52.** *Id.* at ¶ 67.

**53.** The only document before the court of possible relevance on this issue is a copy of the

partnership agreement. That agreement refers to Walter Leonard as the managing partner. Answers to First Set of Interrogatories, Ex. A thereto at ¶ 8. Therefore, even assuming for the sake of argument that under that provision, Walter Leonard had authority to bind the partnership, he did not sign the building permit application; David Leonard did.

claim arising out of the denial of the building permit submitted by David Leonard.

Plaintiffs, Walter Leonard, Robert Leonard, Bertha Miller, and Donna Dimick, suing in their individual capacities also lack standing to assert a due process claim arising out of the denial of the building permit submitted by David Leonard because they did not submit the disputed building permit. Thus, they did not sustain the requisite injury-in-fact. *See Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2206. Therefore, the Town is entitled to dismissal of the due process claim, insofar as it is based upon the denial of the building permit, asserted by plaintiffs Walter Leonard, Robert Leonard, Bertha Miller, and Donna Dimick, individually and as copartners. The court, will however, allow plaintiff David Leonard, individually, to proceed on his due process claim arising out of the denial of the building permit, because he signed and submitted that permit application on behalf of himself. Consequently, he can argue that he sustained an injury-in-fact by the denial of that permit.

### B. § 1983

There is one final procedural point, albeit relatively minor, raised by the Town, which the court must consider before examining the merits of the due process claim. The Town believes that because the complaint does not recite that David Leonard is relying on 42 U.S. § 1983 to assert his due process claim, the court must dismiss that claim. In the court's view, however, that technical defect does not require dismissal. The court agrees with the Town that no direct cause of action is available under the fourteenth amendment against a municipality. *See Turpin v. Mailet,* 591 F.2d 426, 427 (2d Cir.1979). The court is also fully aware that nowhere in the complaint is there any mention of § 1983. Nonetheless, the court can perceive of no prejudice to the Town at this juncture in interpreting the fourteenth amendment due process claim as being

based upon § 1983, especially where the Town itself has so construed the complaint and has amply addressed such claim in its various submissions to the court. In this way, the court can move on to address the merits without any additional further delay. To allow an amendment of the complaint now, as plaintiffs suggest, and then require filing and service of the same, would, in the court's view, just further delay the resolution of this already long outstanding motion.

### C. Denial of the Building Permit

At long last, the court can focus on the heart of this controversy—the Town's denial of the building permit sought by David Leonard. Relying primarily upon *RRI Realty Corp. v. Southampton,* 870 F.2d 911 (2d Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989), the Town contends that David Leonard cannot show a due process violation based upon the denial of his building permit application. The Town proffers four reasons to support its position. First, the Town asserts that David Leonard's due process claim must fail because he cannot show a clear entitlement to the building permit, and thus he can show no property interest protected by the fourteenth amendment.[54] Second, the Town claims that David Leonard cannot show that the building permit was denied for an improper purpose.[55] Third, the Town points to the fact that the denial was at the request and direction of the DOH, which informed the Town that David Leonard's building permit application was defective.[56] And fourth, the Town contends that the application was incomplete.[57]

In *RRI Realty,* the Second Circuit had occasion to address the issue "[o]f whether an applicant for a building permit, ..., had a sufficiently clear entitlement to the permit to constitute a property interest protected by the Due Process Clause." *Id.* at 912. The Second Circuit, reversing the district court, found that the record was insufficient to support such a finding. In so

---

**54.** Defendant's Letter Brief (March 4, 1991) at 2; *see also* Defendant's Letter Brief (March 20, 1991) at 1.

**55.** *Id.*

**56.** *Id.; see also, id.* at 2.

**57.** *Id.*

doing, the Court reiterated the entitlement test previously enunciated in *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir.1985); that is that an applicant must show a "certainty or a very strong likelihood" of issuance of the building permit. *Id.* at 918 (*quoting Yale Auto Parts*, 758 F.2d at 59).[58] Significantly, the Second Circuit explicitly stated that "[t]he fact that the permit could have been denied on nonarbitrary grounds defeats the federal due process claim." *Id.* at 918.

After engaging in an entitlement inquiry, the Court in *RRI Realty* did not agree with plaintiff that absent the alleged denial of due process, there was a "certainty or a very strong likelihood" that the municipal defendants would have granted RRI's application for a building permit. The Court did not accept that argument, despite that fact that there was evidence of statements by municipal officials that approval of the application was "probably forthcoming." *RRI Realty*, 870 F.2d at 919. Relying upon the fact that the municipal code conferred "wide discretion" on the issuing agency to review the final design plans, as well as upon the fact that the municipality had offered several valid reasons for rejecting the application, the Court found that "[a]s a matter of law, there was no property interest in the permit." *Id.*

 The same conclusion is warranted here; that is that as a matter of law, David Leonard has not shown that he has a property interest in the building permit. Without referring to any specific provision of the Town Code, David Leonard asserts that "[i]ssuance of a building permit is a non-discretionary act when all of the conditions precedent have been met." Plaintiffs' Letter Brief (March 15, 1991) at 2. Therefore,

on that basis, David Leonard apparently believes that he has shown a clear entitlement to the building permit, and hence a protected property interest for fourteenth amendment purposes. The court does not agree.

In making his argument David Leonard is overlooking one critical, undisputed fact, and that is the existence of a legitimate, non-arbitrary ground for denying the building permit application. In particular, the building permit could have been denied solely on the non-arbitrary basis that David Leonard failed to submit a site plan as required by § 73–32(B) of the Town Code.[59] Thus, even absent the alleged denial of due process, David Leonard simply cannot show that there was either a "certainty or a very strong likelihood" that the building permit application would have been granted. While it is true that the discretion of the issuing agency here is not nearly as broad as that afforded the issuing agency in *RRI Realty*, that fact does not change the court's analysis.[60] Therefore, based upon the fact that David Leonard's building permit could have been denied on the non-arbitrary ground that he did not submit the requisite site plan with his permit application, the Town's motion for summary judgment on that due process claim must be granted. *See RRI Realty*, 870 F.2d at 918.

## IV. Pendent State Claims

 In light of the foregoing, because there are no federal claims remaining, the court will relinquish its jurisdiction over the pendent state claims for public nuisance, unjust enrichment, and restitution, in accordance with the well recognized rule that "[i]f the federal claims are dismissed

---

**58.** In *The Dun & Bradstreet Corp. Foundation v. United States Postal Service*, 946 F.2d 189 (2d Cir.1991), the Second Circuit very recently reminded lower courts of the continuing validity of *Yale* and its progeny, stating, once again, that "[w]e have focused on 'the extent of the issuing agency's discretion to grant or deny the [relief] in question.'" *Id.* at 193 (*quoting Natale v. Town of Ridgefield*, 927 F.2d 101, 105 (2d Cir. 1991)).

**59.** Section 73–32(B) expressly requires the following in connection with the issuance of a building permit:

> All applicants for building permits [sic] *shall* submit four (4) copies of a layout or plot plan drawn to scale with all dimensions shown on forms provided by the town. Said application shall show the exact size and location of the lot, building and accessory buildings and the intended use of such buildings.

Defendant's Letter Brief (March 4, 1991), Ex. thereto (emphasis added).

**60.** In the present case, unlike *RRI Realty*, there is no explicit, broadly worded grant of discretion given to the Town Board or to the Code Enforcement Officer.

before trial, even though not insubstantial in a jurisdictional sense, the state claims must be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### V. SANCTIONS[61]

■ As is evidenced by the time and effort which this court has spent in resolving the Town's motion, this case is clearly not one in which an award of sanctions would be appropriate. This is not a case, as the Town suggests, where plaintiffs and their attorney "clearly knew or should have known that the causes of action set forth in [their] complaint were inappropriate and improper 'after reasonable inquiry' of the relevant facts and the applicable law." Memorandum in Support of Defendant's Motion for Summary Judgment on Plaintiff's Complaint at 66 (*quoting* Fed.R.Civ.P. 11). Thus, defendant's motion for sanctions is denied.

In short, for all of the reasons discussed herein, defendant's motion for summary judgment is granted, and the complaint is dismissed.

IT IS SO ORDERED.

---

**61.** The court observes that in its Notice of Motion defendant states that it "cross-moves" for sanctions; but since defendant is the only moving party, technically this is not a cross-motion, just an additional motion.