■ Pawel Czernicki, Appellant, v Marek Lawniczak, Respondent. [904 NYS2d 127]—

In an action, inter alia, to partition real property and for an accounting, the plaintiff appeals from a judgment of the Supreme Court, Kings County (Knipel, J.), dated February 20, 2008, which, after a nonjury trial, directed the partition and sale of the subject property, directed the parties to proceed to an accounting and, in effect, directed that the proceeds of the sale of the subject property be divided equally between the parties.

Ordered that the judgment is modified, on the law and the facts, by deleting the provision thereof which, in effect, directed that the proceeds of the sale of the subject real property be divided equally between the parties, and substituting therefor a provision directing that the plaintiff shall receive a credit for one half of the down payment and closing costs incurred in the purchase of the subject property, together with interest at a rate of 8% per annum from the date of closing, and that any proceeds thereafter remaining after all appropriate adjustments are made in the course of an accounting shall be divided equally between the parties; as so modified, the judgment is affirmed, with costs to the plaintiff.

In November 1988 the plaintiff and the defendant entered into a partnership to purchase a three-family residence located at 121 Huron Street in Brooklyn (hereinafter 121 Huron). The plaintiff claims that he contributed the entire $22,000 down payment toward the purchase of that property, and that the defendant, who had a real estate license, agreed to manage the property and to reimburse him for one half of the down payment. The terms of the parties' agreement were partially memorialized in a brief written agreement which, inter alia, required the defendant to pay the plaintiff the sum of $11,000 in monthly installments with interest at the rate of 8% per annum. The agreement further provided that, upon the sale of 121 Huron, any balance still owed by the defendant would be paid to the plaintiff.

Approximately seven months later, in June 1989, the parties purchased a 13-unit apartment building located at 155 Huron Street in Brooklyn (hereinafter the apartment building), which is the subject of this action. It is undisputed that the plaintiff contributed all down payment and closing costs, totaling more than $50,000, toward the purchase of the apartment building. The plaintiff alleges that the defendant similarly agreed to reimburse him for one half of the down payment and closing costs incurred in connection with the purchase of the apartment building, and to undertake the management of the premises. However, the parties did not memorialize the terms of their agreement with respect to the apartment building in writing.

The defendant managed the apartment building continuously from the date of its purchase in June 1989 until April or May 1995. During approximately three years of this almost six-year period, the plaintiff was out of the country. The plaintiff claims that, when he returned to the United States in 1995, he found the building to be in poor condition, with its mortgage and real property tax payments in arrears. The plaintiff subsequently commenced this action, inter alia, seeking a partition and sale of the apartment building and an accounting, and to recover damages for waste and breach of an oral partnership agreement. The plaintiff specifically alleged, in his amended complaint, that he and the defendant had "entered into an oral agreement of partnership to operate, manage and control" the apartment building. In a second amended answer to the amended complaint, the defendant admitted that the parties had entered into an oral partnership agreement with regard to the apartment building, and counterclaimed, among other things, for a partition and sale of the premises and an accounting.

At a nonjury trial conducted in December 2007, the plaintiff testified that he and the defendant purchased the apartment building as partners, and that they had a verbal agreement "just like" their agreement with respect to 121 Huron. More specifically, according to the plaintiff, the defendant was required to reimburse him for 50% of the down payment and closing costs, with interest at a rate of 11 or 11½% per annum, and to manage the apartment building. The plaintiff also claimed that in the event the defendant failed to repay his share of down payment and closing costs within five years, the verbal agreement required him to convey his interest in the apartment building to the plaintiff without financial consideration. The plaintiff further testified that the defendant did not reimburse him for any portion of the down payment and closing costs, and ceased managing the apartment building in May 1995, leaving the premises in "deplorable condition." To substantiate his claim that the parties agreed to own and operate the apartment building as partners, the plaintiff submitted in evidence federal partnership income tax returns for the tax years 1989 through 1994. The partnership returns identified the apartment building as a partnership asset, and represented that each party owned 50% of the partnership's capital, and that each shared 50% of the partnership's profits and losses.

In contrast, the defendant maintained that he never had an agreement with the plaintiff to repay one half of the down payment and closing costs for the apartment building. However, he

testified that he contributed to the venture by negotiating an advantageous purchase price, and agreeing to be responsible for the day-to-day management of the building. The defendant admitted that since the plaintiff was out of the country in 1992, 1993, and 1994, he provided an accountant with the necessary information to prepare partnership income tax returns for those tax years. The defendant acknowledged that he stopped managing the property sometime around April 1995. Although the defendant maintained that there were no mortgage or utility arrears at that time, he admitted that there were outstanding real estate taxes, which the rental income generated by the building was insufficient to defray. The defendant also explained that, shortly after purchasing the apartment building, the parties learned that there were numerous violations which had to be corrected, and that the superintendent tried to do as much as he could with the limited amount of money the parties had available to spend.

At the conclusion of the trial, the Supreme Court determined that the plaintiff had failed to sustain his burden of demonstrating the existence of an oral partnership agreement with respect to the apartment building, relying heavily upon the fact that "the parties did have the presence of mind to enter into a written agreement with regard to 121 Huron Street, but . . . failed to enter into such a written agreement" with regard to the apartment building. The Supreme Court also stated that while there had been much testimony about the adequacy of the defendant's management services, this had no bearing upon the question of ownership. The Supreme Court found that the parties were equal owners of the apartment building, and directed that the premises be partitioned and sold, and that the parties proceed to an accounting before a judicial hearing officer. A judgment was subsequently entered, and the plaintiff appeals.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit" (Partnership Law § 10 [1]). When there is no written partnership agreement between the parties, the court must determine whether a partnership in fact existed from the conduct, intention, and relationship between the parties (see Community Capital Bank v Fischer & Yanowitz, 47 AD3d 667, 668 [2008]; Brodsky v Stadlen, 138 AD2d 662, 663 [1988]). Factors to be considered in determining the existence of a partnership include (1) sharing of profits, (2) sharing of losses, (3) ownership of partnership assets, (4) joint management and control, (5) joint liability to creditors, (6) intention of the parties, (7) compensation, (8) contribution of capital, and (9) loans to the organization (see Brodsky v Stadlen, 138 AD2d at 663).

"In reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and this Court may render the judgment it finds 'warranted by the facts,' bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses" (*Stevens v State of New York*, 47 AD3d 624, 624-625 [2008], quoting *Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *see Lerner v Ayervais*, 66 AD3d 644, 645 [2009]). Applying this standard here, we find, based upon the testimony and documentary evidence offered at trial, that the parties entered into an oral agreement to purchase, own, and operate the apartment building as partners. Although the parties offered conflicting testimony as to the specific terms of their agreement, the defendant admitted in his second answer to the plaintiff's amended complaint that they had "entered into an oral agreement of partnership to operate, manage and control" the apartment building. Furthermore, even during the three-year period when the plaintiff was absent from the country, the defendant admittedly provided the parties' accountant with the information necessary to prepare federal partnership income tax returns, which declared the apartment building to be a partnership asset, and represented that each party owned 50% of the partnership's capital, and that each shared 50% of the partnership's profits and losses. Indeed, the parties are bound by the representations made in the partnership tax returns (*see Peterson v Neville*, 58 AD3d 489 [2009]; *Acme Am. Repairs, Inc. v Uretsky*, 39 AD3d 675, 676-677 [2007]). There was also evidence that the parties had joint liability on two mortgages. Given this ample evidence of the parties' intent to purchase, own and operate the apartment building as partners, their failure to memorialize the agreement in writing is not dispositive. Accordingly, the facts adduced at trial warrant a conclusion that the parties entered into a partnership at will, which was dissolved by operation of law in April or May 1995, when the defendant stopped managing the building, and his involvement in the enterprise ceased (*see Mashihi v 166-25 Hillside Partners*, 51 AD3d 738, 739 [2008]; *Staines Assoc. v Adler*, 266 AD2d 52 [1999]).

In view of the Supreme Court's determination that no oral partnership agreement existed, it made no findings of fact regarding the terms of that agreement. However, the record is sufficient to allow this Court to do so. Thus, we find that the credible evidence presented at trial supports a finding that the defendant was indeed obligated to reimburse the plaintiff for one half of the down payment and closing costs incurred in the purchase of the apartment building. The plaintiff's claim that

reimbursement was required is consistent with the parties' course of conduct in connection with their prior purchase of 121 Huron. The testimony presented at trial reveals that the parties shared the closing costs incurred in connection with their purchase of 121 Huron, and their written agreement required the defendant to reimburse the plaintiff for one half of the down payment with interest at a rate of 8% per annum. However, given the plaintiff's imprecise testimony as to whether the parties agreed to an interest rate of 11 or 11½% per annum in connection with their purchase of the apartment building, and the lack of explanation for why the defendant would have been required to pay a higher interest rate than he agreed to in connection with the purchase of 121 Huron a few months earlier, we find that the parties' agreement required the defendant to reimburse the plaintiff for his share of down payment and closing costs at the same annual 8% interest rate memorialized in their prior written agreement. We also reject the plaintiff's claim that the defendant forfeited all interest in the apartment building by failing to timely reimburse him for his share of the down payment and closing costs. The parties' prior written agreement with respect to 121 Huron contained no such provision, and in fact provided that any money still due to the plaintiff would be payable upon the sale of that property. In addition, while the plaintiff's amended complaint included an allegation that the defendant's interest in the premises was solely and wholly contingent upon his proper management of the building, he offered no testimony to this effect at trial. Moreover, this allegation is contradicted by the partnership tax returns declaring that each party had a 50% interest in the partnership capital. In any event, the plaintiff failed to establish that the condition of the apartment building upon his return to the United States in 1995 was attributable to the defendant's improper management, rather than the poor condition of the building at the time of purchase and limited funds for repairs.

We note that both parties in this action seek a partition and sale of the subject apartment building, and that the accounting which was ordered by the Supreme Court is the most appropriate mechanism by which to calculate the parties' respective capital contributions to the partnership, including the plaintiff's contribution toward the down payment and closing costs (see *Novaro v Jomar Real Estate Corp.*, 163 AD2d 69 [1990]). In accordance with what we have determined to be the terms of the oral partnership agreement, the plaintiff is entitled to receive a credit for one half of the down payment and closing costs incurred in the purchase of the subject property, together with interest at a rate of 8% from the date of closing. Any proceeds

which are thereafter remaining after all appropriate adjustments are made in the course of the accounting should be divided equally between the parties at the conclusion of the accounting. Skelos, J.P., Eng, Belen and Austin, JJ., concur.