Frank A. Barone, Plaintiff,

against
Gilma Posada Barone A/K/A MARIA G. BARONE, INDIVIDUALLY AS OFFICER AND SHAREHOLDER OF J.P. BARONE PROPERTIES, INC., AS OFFICER AND SHAREHOLDER OF BARONE PROPERTIES, INC. AND AS OFFICER AND SHAREHOLDER OF BARONE PROPERTIES II, INC. BARONE PROPERTIES, INC. AND BARONE PROPERTIES II, INC., Defendants.


9162/12

For Plaintiff
Lewis C. Edelstein, Esq.
Garden City, NY 11530
For Defendant
Marshall M. Stern, Esq.
Huntington Station, NY 11746


Timothy J. Dufficy, J.

DECISION AFTER TRIAL
A trial was held before this Court on June 27, 2016; October 24, 29, and 30, 2016; and November 10, 26, 27 and 31, 2016. After having had the advantage of seeing the witnesses and hearing the testimony (see Neiss v Fried, 127 AD3d 1044, 1046 [2d Dept. 2015]), the Court makes the following Findings of Fact and Conclusions of Law.
FINDINGS OF FACT
This is a family matter in which one critically-ill brother, Frank A. Barone (Frank) [*2]and his relatives are suing his deceased brother's [FN1]
ex-wife seeking a share of the fortune she inherited from the deceased brother under his will. They were rebuffed in a related matter in the State of Pennsylvania (see Barone v Barone, Pa. Super Unpub. LEXIS 615; 120 A3d 1062 [Super. Ct. Pa. 2015] app. den. 124 A3d 308 [2015]). Nevertheless, the plaintiff hired counsel, essentially attempting to invalidate a will that went unchallenged during the probate process. Under that will, the living brother was left only an annuity that would pay him a fixed sum of $50,000 per year, while his wife was left $40 million in property. Invoking the claim that he and his brother and his sister-in-law were somehow partners, the living brother seeks to recoup a partner's share of his deceased brother's real-estate fortune.
Brothers Joseph and Frank started their business partnership, in 1962, selling used cars out of a trailer in a lot they rented at 189 -19 Northern Blvd., Flushing, NY. Each brother contributed $10,000 of their own personal funds as start-up capital. They signed a receipt evidencing their investment. They continued their business relationship in the same manner for thirty years. They purchased approximately forty (40) properties together over the next thirty years. All of the properties were titled solely in Joseph's name. When his brother became ill, Frank did most of the "legwork" for the business. Joseph married the defendant, Gilma Posada Barone a/k/a Maria Barone (Maria Barone), on November 3, 1978, and was still married to her at the time of his death, on December 12, 1992.
At the time of his death, on December 12, 1992, Joseph owned thirty-one properties all titled in his name only. All of the mortgages on the properties were in the name of Joseph only. All bank accounts for Joseph's various businesses were in the name of Joseph only. In April 1992, Joseph Barrone executed his final will, leaving all of his property to his wife Maria Barone. Under the will, he appointed his brother, Frank Baron, as executor. He directed his brother Frank to purchase an annuity for himself which would pay Frank the sum of $50,000 per year for the rest of his life. The cost of the annuity was $751,796.24. Frank, as executor, submitted his brother's will to probate shortly thereafter. Frank never challenged his brother's estate. At the time of his brother's death, Frank did not assert a claim for a partnership interest in the property titled to Joseph or assert a claim seeking a constructive trust interest in said property. The estate proceeding concluded in 1995. All investments listed in the estate tax return were in the name of Joseph only. Schedule E of form 706 on page 16 of the estate tax return entitled "jointly owned property" shows "none".
As the executor, Frank transferred all of the real properties in his brother's name into a corporation called J. P. Barone Properties, Inc. On November 7, 1995, plaintiff Frank was named president, and defendant Maria Barone was named vice-president and [*3]secretary of the Barone company. Maria Barone held a single share of stock representing 100% ownership of the corporation. The plaintiff was told repeatedly by the bookkeeper, Ms. Zimmy, that the only way he could become a part owner in the Barone company was to purchase an interest or have the shares given to him with tax consequences. He was never given any shares of stock in either of the Barone corporations nor did he purchase any shares of stock. On December 15, 1995, attorney George Meehan changed the name of the corporation from J. P. Barone Properties, Inc. to Barone Properties Inc. By deeds dated January 1, 1996, plaintiff Frank, as executor of the Estate of Joseph, transferred the income producing real properties to Barone Properties Inc. Each deed was signed "Estate of Joseph P. Barone by Frank A. Barone, Executor." The deeds were prepared by attorney George Meehan.
Attorney Meehan also simultaneously prepared an employment agreement, dated January 1, 1996, by and between Barone Properties Inc. and plaintiff Frank. Plaintiff Frank signed for himself as employee and defendant Maria Barone signed as vice-president and sole stockholder on behalf of defendant Barone Properties Inc. Defendant Maria Barone struck from the employment agreement paragraph number five which provided a death benefit to Frank's wife in the event he died during the term of the employment agreement. The duration of the agreement was ten years. The agreement explicitly stated that Barone Properties, Inc. was the employer, and Frank was the employee. The preamble to the agreement noted that the employer was engaged in the real estate business as the owner of numerous parcels of real property and that the employer desired the services of the employee, and the employee was willing to be employed by the employer.
The existence and evidence of this ten-year agreement is inconsistent with Frank's claim that he was a partner with defendant Maria Barone during this time. When the employment agreement dated January 1, 1996 expired, a second employment agreement with similar terms as the first, effective as of January 1, 2006, was signed by plaintiff Frank as employee and defendant Marie Barone as vice-president and sole stockholder. This agreement had a term of four years. Frank's job duties included, but were not limited to, negotiating leases, collecting rents and resolving Buiding-Department violations. Both plaintiff Frank and defendant Maria Barone were paid wages and given W-2s at the end of each year. Mary Zimmy, the tax preparer for all of the parties, prepared a K-1 only for Maria Barone, since she was the sole owner of the company. Business losses were never reported on Frank's tax returns. Frank and Maria were both paid high salaries which, coupled with the depreciation on the buildings, and a depression in the real-estate market, caused the corporation to sustain losses. Those losses were reported on corporate K-1's that ultimately resulted in Maria Barone receiving large tax refunds on her personal taxes. Maria Barone's personal tax returns were audited twice by the IRS, which determined that the deductions for the corporate losses were permissible. Some of the properties had a number of underground fuel storage tanks. To shield the other properties [*4]from the potential liability of the tank properties, a separate entity was formed to encompass those properties where tanks existed or had existed. On August 16, 2005, Barone Properties II, Inc. was formed. Both Barone Properties Inc. and Barone Properties II, Inc. were and continue to be subchapter S corporations for federal and state tax purposes. Maria Barone was and is the sole shareholder of both corporations. All tax returns were prepared by Mary Zimmy. Every K-1 and corporate tax return filed by Barone Properties, Inc. and Barone Properties II, Inc. was signed by plaintiff Frank as president, naming Maria Barone as the sole 100% shareholder. All of the written evidence during the trial supported the conclusion that plaintiff Frank was not a shareholder, not the possessor of the right to be a shareholder, nor did not have an ownership interest in any of the Barone corporations.
On January 4, 2012, plaintiff Frank's employment was terminated. At the time of his termination, both Barone corporations had approximately $1.8 million in uncollected rents from delinquent tenants, had not segregated all security deposits, had inadequate security deposits, had Building-Department violations, had an expired certificate of occupancy for one of its properties, and had a default judgment entered in this Court against Barone Properties, Inc.
Plaintiff Frank did not challenge defendant Maria Barone's decision to terminate his employment, and vacated the office of Barone Properties, Inc. After being terminated, he did not return. One of the witnesses, Patricia Milonas, testified that, in the beginning of January 2012, she was walking to work, when she noticed a white van parked across the street from the Barone company office. She observed boxes being taken to the van by one of the two men that worked on the property. The van was loaded full of boxes which were being removed from the Barone business trailer. A few days later, she went to the trailer to check on the plaintiff, and was told by defendant Maria Barone that the plaintiff was no longer working there. It appeared to her that the plaintiff's office was cleaned out.
CONCLUSIONS OF LAW
Partnership
The burden of establishing the existence of a partnership by a fair preponderance of the credible evidence rests upon the defendant (see Matter of Alpert, 37 AD3d 187 [1st Dept. 2007]; F & K Supply, Inc. v Willowbrook Dev. Co., 304 AD2d 918 [3d Dept. 2003]; see also Kahn v Kahn, 160 NYS2d 972 [1st Dept. 1958]). Whether partnership status is enjoyed turns on various factors, including sharing in profits and losses, exercising joint control over the business, and making capital investment and possessing an ownership interest in the partnership. (See e.g. Matter of Steinbeck v Gerosa, 4 NY2d 302, 317-318 [1958], app dsmd 358 U.S. 39 [1958]; Kavanaugh v Nussbaum, 71 NY2d 535 [1988]; M.I.F. Secs. Co. v R. C. Stamm & Co., 94 AD2d 211, 211 [1st Dept. 1983]). Thus, when determining whether a partnership exists giving rise to a fiduciary duty, courts look to a [*5]number of factors including "the intent of the parties. whether there was a sharing of profits and losses, and whether there was joint control and management of the business." (Pierce v Stevens [In re Stevens], 2014 Bankr. LEXIS 4860 [Bankr. N.D.NY 2014]; see also Fasolo v Scarafile, 120 AD3d 929 [4th Dept. 2014])
A partnership is an association of two or more persons to carry on as co-owners a business for profit" (Partnership Law § 10 [1]; see Czernicki v Lawniczak, 74 AD3d 1121, 1124 [2d Dept. 2010]). "When there is no written partnership agreement between the parties, the court must determine whether a partnership in fact existed from the conduct, intention, and relationship between the parties" (Czernicki, 74 AD3d at 1124; see Bianchi v Midtown Reporting Serv., Inc., 103 AD3d 1261 [2d Dept. 2013]; Griffith Energy, Inc. v Evans, 85AD3d 1564,1565 [4th Dept. 2011]). Relevant factors for the court to consider in determining whether a partnership existed include the intent of the parties, whether there was a sharing of profits and losses, and whether there was joint control and management of the business (see Bianchi, 103 AD3d at 1261-1262). "No one factor is determinative [but, rather,] it is necessary to examine the parties' relationship as a whole" (Kyle v Ford, 184 AD2d 1036, 1037 [4th Dept. 1992]).
Where, as here, there is no written partnership agreement between the parties, a court may find that a partnership exists based on the "conduct, intention, and relationship between the parties." (Max v GS Agrifuels Corp., 2013 NY Misc. LEXIS 5782, *12-13, 2013 NY Slip Op 33110(U), 10-11 [Sup. Ct. NY Co. 2013] quoting Brodsky v Stadlen, 138 AD2d 662, 663 [2d Dept 1988]).
Here, the requisite factors of a partnership in fact, or de facto partnership, are absent. The evidence adduced at trial does not support the plaintiff's theory that he
was the individual defendant's partner. Moreover, there is no credible evidence that the plaintiff and his brother were actually ever partners in the legal sense. Under section 11 of the Partnership Law of the State of New York, partners mutually promise to share in the profits of the business, as well as accepting the burden of carrying the losses. Here, there is not one scintilla of evidence to support the conclusion that the plaintiff ever agreed, either with his brother or with defendant Maria Barone, to be liable for the losses of the corporation. This, coupled with the fact that he lacked the tangible vestiges of partnership, namely a partnership agreement, K-1's from the partnership, his own personal tax returns showing partnership income, check stubs showing payments from the partnership to himself, proof of a checking account of which he was an authorized signatory, canceled checks signed by him for partnership expenses, proof of partnership property held in his name, or proof of mortgages for partnership property for which he was jointly or solely liable. With respect to the commercial property at issue, the individual defendant established that it was owned solely by her late husband, and then by her as sole corporate shareholder, and that the plaintiff had no legal interest in the property. "Although individual property ownership does not prove the absence of a partnership, it can be evidence that the parties did not intend to create a partnership [*6]relation" (J. William Callison & Maureen A. Sullivan, Partnership Law & Practice § 5:16; see F & K Supply, Inc. v Willowbrook Dev. Co., 304 AD2d 918 [3d Dept. 2003] ). Moreover, the plaintiff failed to produce any evidence that he agreed to share either his deceased brother's or the individual defendant's' losses with respect to the property at issue, "which is an 'essential element' of a partnership" (Prince v O'Brien, 256 AD2d 208, 212 [1st Dept. 1998]; Moses v Savedoff, 96 AD3d 466  [1st Dept. 2012]; see generally Partnership Law & Practice § 5:14). The fact that he felt in his own mind that he was a partner of the real-estate business with his brother is legally insufficient to carry his burden. Thus, the court cannot credit his self-serving testimony during the trial that he was a partner with his brother. That is a conclusory allegation which is wholly unsupported by the documentary evidence produced during the trial.
Moreover, "when parties adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. They cannot be partners as [among themselves,] and a corporation as to the rest of the world." (Weisman v Awnair Corp. of Am., 3 NY2d 444, 449 [1957] (internal quotation marks omitted). Further, "[w]hether partnership status is enjoyed turns on various factors including sharing in profits and losses, exercising joint control over the business and making investments and possessing ownership interest in the partnership. . . the fact that an individual receives a share of the profits is not dispositive." (Blaustein v Lazar Borck & Mensch, 161 AD2d 507, 508 [1st Dept 1990]). Thus, the fact that the individual defendant generously shared a portion of the corporation's profits with the plaintiff is not dispositive. A partnership and a corporation are mutually exclusive entities and cannot coexist (see Carpenter v Weichert, 51 AD2d 817, 818, [1976] lv denied 39 NY2d 708 [1976]). Thus, "when individuals do determine to conduct business through a corporation, . . . they are not at one and the same time joint venturers and stockholders, fiduciaries and nonfiduciaries, personally liable and not personally liable" (Weisman v Awnair Corp. of Am., supra at 449), and "the equitable remedy of an accounting is not available" (Carpenter v Weichert, supra at 818). Here, there is insufficient tangible proof in the record that the Barone firm operated as a partnership despite its legal incorporation, or that defendant Maria Barone continued to operate as a de facto partnership following the death of Joseph and the firm's incorporation in February, 2001 (see e.g. D'Orazio v Mainetti, 24 AD3d 915, 916-917 [3d Dept. 2005]). 
In addition, the fact that Frank signed an employment agreement, with an initial term of ten years following his brother's death and held the presidency of the company, while not holding any shares of the company, belies his claim that he was a partner of the individual defendant, Maria Barone. He also signed the one and only stock certificate issued by the company, giving defendant Maria Barone 100% ownership of the corporation. This, along with the preceding chain of events, gave him notice that he was not, in fact, a partner of the individual defendant. The mere fact that the plaintiff and [*7]defendant Maria Barone took the same salary from the corporation each year, does not, absent some other indicia of partnership, indicate that the plaintiff and the defendant Maria Barone were partners. Moreover, each tax return and K-1 filed by the parties' bookkeeper listed Maria, the individual defendant, as the 100% owner of the corporation, and demonstrated that 100% of the profits and losses was a pass-through to the individual defendant's personal income-tax return. Following the initial ten-year term of the plaintiff's employment agreement with the Barone corporation, the plaintiff requested and was given a second employment agreement, which he signed, on January 1, 2006. Again, he failed to assert his alleged standing as Maria Barone's partner. The plaintiff never purchased shares of the corporation or requested to receive them as a gift.
Constructive Trust
The elements of a constructive trust are: (1) a confidential or fiduciary relationship between the parties; (2) a promise; (3) a transfer of an asset in reliance upon the promise; and (4) unjust enrichment flowing from the breach of the promise (see Hall v McDonald, 115 AD3d 646 [2d Dept 2014]; Williams v Eason, 49 AD3d 866 [2d Dept 2008]). To recover for unjust enrichment, a plaintiff must show that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered (see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173 [2011]; UETA Latinamerica, Inc. v Zafir, 129 AD3d 704, 705-706 [2d Dept. 2015]). "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated" (Mandarin Trading Ltd. v Wildenstein, supra at 182, citing Sperry v Crompton Corp., 8 NY3d 204, 215 [2007]; J.P. Plumbing Corp. v Born to Build Constr. Corp., 137 AD3d 976, 977 [2d Dept. 2016] ). These elements must be proven by clear and convincing evidence (Ning Xiang Liu v Al Ming Chen, 133 AD3d 644 [2d Dept. 2015] quoting Diaz v Diaz, 130 AD3d 560, 561 [2d Dept. 2015]). "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him [or her] into a trustee'" (Simonds v Simonds, 45 NY2d 233, 241 [1978] quoting Beatty v Guggenheim Exploration Co., 225 NY 380 [1919]).
For example, in Kaprov v Stalinsky, (145 AD3d 869 [2d Dept. 2016]), marital assets were used to purchase an apartment in reliance upon an implied promise that title was being held by someone else as a convenience only, and that the apartment belonged to the husband and wife. Likewise, in Liu v Chen, supra at 645, the plaintiff showed that she contributed money for the purchase of the subject property and for paying down the mortgage in reliance on an implied promise by the plaintiff that she shared an interest in the property. In Iwanow v Iwanow, (39 AD3d 476, 477 [2d Dept. 2007]), pursuant to a stipulation, the parties agreed that the husband would purchase for the wife either an [*8]identified property, or one of similar value, and that such property would be titled in her name only, and would remain her separate property.
Here, there is neither a stipulation or anything in writing (see e.g. Vilkelis v Holmes, 2011 NY Misc. LEXIS 320 *, 2011 NY Slip Op 30338(U) [Sup. Ct. NY Co. 2011]), that demonstrates a promise that was relied upon, or any expenditure of funds that was made in reliance upon that promise, express or implied. There is no credible evidence that Frank and Joseph were ever partners, since there was no mutual agreement under which they agreed to share both the profits and losses of the business, no monies expended by the plaintiff in reliance upon a promise, and no partnership agreement. Nor was property acquired under such circumstances that the holder of legal title may not in good conscience retain the beneficial interest therein (see Sharp v Kosmalski, 40 NY2d 119 [1976]). Following the formation of the corporation, there was never a promise made to the plaintiff, or any action taken by him in reliance upon a promise. The plaintiff was never an owner or shareholder of any of the Barone corporations. Since each party will necessarily testify in a manner consistent with their position at trial, the Court must look to documentary evidence that would establish, convincingly, the true state of affairs. The only documentary evidence here is that, following his brother's demise, he was a long-term employee of the corporation.
Accordingly, the plaintiff failed to establish his cause of action seeking a constructive trust at trial, and that cause of action must be dismissed.
Accounting
In order to be entitled to an accounting, plaintiff had to prove the existence of a partnership, joint venture or fiduciary relationship (see Moscatelli v Nordstrom, 40 AD2d 903 [3d Dept. 1972]). Whether partnership status is enjoyed turns on various factors including sharing in profits and losses, exercising joint control over the business and making of investments and possessing an ownership interest in the partnership (see M.I.F. Sec. Co. v Stamm & Co., 94 AD2d 211, 214 [1st Dept. 1983]; Matter of Steinbeck v Gerosa, 4 NY2d 302, 317-318 [1st Dept. 1958]). However, the fact that an individual receives a share of the profits is not dispositive, since all of the elements of the relationship must be considered (see Blaustein v Lazar Borck & Mensch, 161 AD2d 507, 508 [1st Dept.1990]; Ramirez v Goldberg, 82 AD2d 850, 852 [2d Dept. 1982]). Here, the Court has already determined that the plaintiff was not a partner of either his deceased brother or defendant Maria Barone. Accordingly, the plaintiff is not entitled to an accounting, and that cause of action must be dismissed.
Fraud in the Inducement
"A cause of action to recover damages for fraud requires allegations of
(1) a false representation of fact, (2) knowledge of falsity, (3) intent to induce reliance,
(4) justifiable reliance, and (5) damages" (Greenberg v Blake, 117 AD3d 683 [1st Dept [*9]2014] quoting Stein v Doukas, 98 AD3d 1024, 1025 [2d Dept 20I2]). Similarly, the elements of a cause of action sounding in fraudulent inducement are "'representation of a material existing fact, falsity, scienter, deception and injury'" (Dalessio v Kressler, 6 AD3d 57, 61 [2d Dept. 2004] quoting Channel Master Corp. v Aluminum Ltd. Sales,
4 NY2d 403, 407 [1958]). Here, the plaintiff failed to demonstrate that defendant Maria Barone made a representation of fact to him, which was false, upon which he relied. The record does not demonstrate that defendant Maria Barone represented to him that he would become her partner in the business, only that he would become an employee pursuant to an employment agreement, which he willingly signed. In addition, given the fact that he voluntarily signed to employment agreements, that he acted as the executor of his brother's will, that he transferred the subject properties into corporate entities, and that he executed the sole stock certificate by which defendant Maria Barone was the sole shareholder of the Barone companies, any reliance that he might claim upon any representation or promise certainly was not reasonable under the circumstances. Accordingly, the plaintiff's third cause of action for fraud in the inducement must be dismissed.
Unjust Enrichment
"The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (Mandarin Trading Ltd. v Wildenstein, supra, quoting Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421 (1972). A plaintiff must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered' " (Citibank, N.A. v Walker, 12 AD3d 480, 481 [2d Dept 2004]).
The plaintiff's unjust enrichment claim suffers the same deficiency as his other claims - the lack of proof of a partnership relationship between the parties. Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated (see Sperry v Crompton Corp., 8 NY3d 204, 215 [2007). Moreover, having found that the plaintiff had no ownership interest in the defendant's property, and that he was a compensated employee, plaintiff's unjust enrichment claim cannot be sustained. Accordingly, dismissal of the fourth cause of action for unjust enrichment is warranted.
Receivership

The Court may exercise its discretion to appoint a receiver only where the movant has submitted clear and convincing evidence of irreparable loss or waste to the subject property and that a receiver is needed to protect their interests (see CPLR 6401[a]; Natoli v Milazzo, 65 AD3d 1309, 1310 [2d Dept. 2009]; Vardaris Tech, Inc. v Paleros, Inc., 49 AD3d 631, 632, 853 NYS2d 601 [2d Dept. 2008]; Singh v Brunswick Hosp. Ctr., 2 AD3d [*10]433 [2d Dept. 2003]; Matter of Armienti & Brooks, 309 AD2d 659, 661 [2d Dept. 2003]). Here, this request fails because the above conditions have not been satisfied. There has been no showing that the plaintiff has an interest in the property, or that there is the risk of irreparable loss.
Partnership Dissolution
The plaintiff has failed to carry his burden of demonstrating that there was a partnership between himself and defendant Maria Barone. Based upon the Court's conclusion that there was no partnership between the parties, written or otherwise, the plaintiff lacks standing to request dissolution.
CONCLUSION
Plaintiff Frank's response to the lack of any tangible, objective documentary evidence of partnership here is essentially that "he was my brother, we were family, I trusted him." The existence of a familial relationship is no reason to throw caution to the wind where legal rights and obligations are concerned. The Commercial Division of Supreme Court, Queens County, is rife with disputes between litigants who are related, yet claim that they failed to receive their just legal entitlement. If the plaintiff and his brother or his sister-in-law had agreed to share in not only the profits, but the financial obligations of the business at issue here, or the plaintiff had purchased or been gifted shares in the corporation, that might be a basis for a finding of entitlement. But that is not what transpired, based upon this record. As the executor of his brother's will, the plaintiff transferred the real property that had been held solely in his brother's name to the Barone corporations. The Barone corporations continued to operate the business. The plaintiff executed not one, but two employment agreements, which unequivocally stated that Barone was the employer and he was the employee. Federal and state income tax returns were filed for the Barone Corporation, as were state payroll tax forms. There were no partnership tax forms filed. Plaintiff Frank knew, or should have known that he was an officer of the corporation, rather than a partner in a partnership venture. He also knew that defendant Maria Barone held the only share of stock of the corporation, evidencing a 100% interest in the corporation. The court is sympathetic to the plaintiff and his family. However, as tempting as it might be, this Court cannot morph the parties' relationship into something it was not, for the purpose of insuring that everyone in the family receives the benefit of Joseph's massive estate. That would contravene not only the law, but the clear and uncontested wishes of the decedent in his will. By reason of the foregoing, the Court renders its decision in favor of the defendants, dismissing all of the plaintiff's claims in this action.
As to the counterclaim, the Court declines to make any award to the defendants. The losses allegedly sustained were not caused by any negligence or wilfulness of the plaintiff, but by the fact that he was/is physically ill at the time he attempted to continue [*11]to perform his functions, and was unable to do so. When it became obvious that he was no longer physically able to perform his former functions, he was summarily terminated from his position, and his belongings were removed from the office. In addition, the record reflects that the losses in rental income were at least partly, if not wholly attributable to the recession, and the difficulty of many commercial tenants to pay the rent.
Accordingly, based upon the foregoing, it is,
ORDERED, that the plaintiff's case is dismissed; and it is further
ORDERED, that the defendants shall receive no recovery on their counterclaim, which is likewise dismissed.
Dated: February 17, 2017



Footnotes

Footnote 1:Joseph P. Barone, hereinafter Joseph.