22-1107(L)
*In re Bernard L. Madoff Inv. Sec. LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of August, two thousand twenty-three.

Present:
> EUNICE C. LEE,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges*.

_____

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

> *Debtor*.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IRVING H. PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

> *Plaintiff-Appellee*,

v.                                        22-1107(L),
                                          22-1110-bk(CON)

MALCOLM H. SAGE, IN HIS CAPACITY AS PARTNER OR JOINT VENTURER OF SAGE ASSOCIATES AND SAGE REALTY, INDIVIDUALLY AS BENEFICIARY OF SAGE

ASSOCIATES AND SAGE REALTY, AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF LILLIAN M. SAGE,

*Defendant-Appellant*,

SAGE ASSOCIATES, MARTIN A. SAGE, IN HIS CAPACITY AS PARTNER OR JOINT VENTURER OF SAGE ASSOCIATES AND SAGE REALTY, AND INDIVIDUALLY AS BENEFICIARY OF SAGE ASSOCIATES AND SAGE REALTY, ANN M. SAGE PASSER, IN HER CAPACITY AS PARTNER OR JOINT VENTURER OF SAGE ASSOCIATES AND SAGE REALTY, AND INDIVIDUALLY AS BENEFICIARY OF SAGE ASSOCIATES AND SAGE REALTY,

*Defendants*,

SIPC,

*Intervenor*.

_____

| | |
|---|---|
| For Plaintiff-Appellee: | SEANNA R. BROWN (David J. Sheehan, Amy E. Vanderwal, James H. Rollinson, and Lan Hoang, *on the brief*), Baker & Hostetler LLP, New York, NY. |
| For Defendant-Appellant: | TIMOTHY MACHT (Daniel A. Cohen and Peter A. Devlin, *on the brief*), Walden Macht & Haran LLP, New York, NY. |
| For Intervenor: | NICHOLAS G. HALLENBECK (Michael L. Post, Kevin H. Bell, and Nathanael S. Kelley, *on the brief*), *for* Securities Investor Protection Corporation, Washington, DC.[*] |

---

[*] The original version of this Summary Order listed Intervenor's counsel as, in relevant part, "(Kevin H. Bell and Nathanael S. Kelley, *on the brief*), *for* Michael L. Post, Securities Investor Protection Corporation." By letter dated August 18, 2023, Intervenor requested that its listed counsel be revised to, in relevant part, "(Michael L. Post, Kevin H. Bell, and Nathanael S. Kelley, *on the brief*), *for* Securities Investor Protection Corporation." The above caption has been amended in accordance with that request.

Appeal from a judgment of the United States District Court for the Southern District of New York (Keenan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Malcolm Sage ("Sage"), appearing individually and in his capacity as partner or joint venturer of Sage Associates and Sage Realty, appeals from a judgment entered by the district court finding him, Sage Associates, Sage Realty, Martin Sage, and Ann Sage Passer ("Defendants") jointly and severally liable for an award of $16,880,000 to Plaintiff-Appellee Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC ("the Trustee"), as money owed for recoverable transfers from Bernard L. Madoff's investment firm to Sage Associates and Sage Realty's respective investment accounts (the "Sage Accounts"). On appeal, Sage advances two main arguments: first, that the district court selected an erroneous calculation method, called the Net Investment Method, for determining Defendants' net equity, and second, that the court erroneously found Defendants jointly and severally liable by incorrectly characterizing Sage Associates and Sage Realty as de facto partnerships. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, which we recount only as necessary to explain our decision.

The present litigation results from the Ponzi scheme carried out by Madoff via his investment firm Bernard L. Madoff Investment Securities LLC ("BLMIS"). After Madoff's arrest and BLMIS's collapse, the Trustee was appointed under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa–78lll,[1] and purposed with recovering and fairly

---

[1] "SIPA establishes procedures for liquidating failed broker-dealers and provides their customers with special protections." *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 233 (2d Cir. 2011). A

redistributing investor property that Madoff had misappropriated. To determine the Sage Accounts' net equity, the Trustee advocated for, and the district court applied, the "Net Investment Method," under which "the 'net equity' of a given BLMIS account is determined by calculating the total amount of money that was invested in the account minus the total amount of money that was withdrawn over the account's lifetime." *Picard v. Sage Realty*, Nos. 20CV10109(JFK), 20CV10057(JFK), 2022 WL 1125643, at *2 (S.D.N.Y. Apr. 15, 2022). Sage objected to the use of the Net Investment Method and instead sought to be credited with certain sums reflected in the Sage Accounts' statements, despite the fact that those sums, like those reported in the account statements of all BLMIS investors, were fraudulent and largely based on fictitious trades that did not actually occur. The court also found that the entities that held the Sage Accounts were de facto partnerships, with the Sage siblings (Malcolm, Martin, and Anne) as the general partners, because—despite not entering into a partnership agreement—the Sages shared in the accounts' profits and losses, financially contributed to the accounts, and identified the accounts as general partnerships on federal, state, and local tax returns. As a result of these findings, the district court concluded that Defendants were jointly and severally liable to the Trustee for $16,880,000.

The district court issued its judgment following a multiweek bench trial. "After a bench trial, we review the district court's finding[s] of fact for clear error and its conclusions of law *de novo*. Mixed questions of law and fact are also reviewed *de novo*." *Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42, 58 (2d Cir. 2022) (alteration adopted) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 n.2 (2d Cir. 2013)). On appeal, Sage challenges both the

---

customer's share of the liquidation fund is determined by that customer's "net equity," which is generally defined as "the dollar amount of the account or accounts of a customer." 15 U.S.C. § 78lll(11).

4

district court's use of the Net Investment Method and its conclusion that the Sage Accounts were held by partnerships.

### I.      The District Court Properly Applied the Net Investment Method

The central question on appeal is whether the district court applied the correct calculation method for determining the amount of net equity in the Sage Accounts. The Trustee argues that because BLMIS perpetrated the fraud by fabricating all customer account statements and comingling customer funds, the district court appropriately applied the Net Investment Method. Sage, by contrast, claims that he oversaw Madoff's management of the Sage Accounts by directing and authorizing transactions, and argues that the district court therefore should have applied the "Last Statement Method," under which net equity would be calculated by "credit[ing] the securities reported in [the Sage Accounts'] final account statements." *Sage Realty*, 2022 WL 1125643, at *17.

In *In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 229 (2d Cir. 2011) (the "*Net Equity*" decision), this Court found the Net Investment Method to be a legally sound technique for determining net equity under SIPA. *Net Equity*, like this appeal, arose from the Madoff Ponzi scheme, with the parties disputing the appropriate calculation method for determining defrauded customers' net equity. There—as is the case here—the Trustee, Irving Picard, determined "that each customer's 'net equity' should be calculated by the 'Net Investment Method,'" but some former BLMIS customers instead argued for the application of the Last Statement Method. *Net Equity*, 654 F.3d at 233. We ultimately sided with the Trustee, reasoning that the Net Investment Method was the most reasonable calculation method because, under Madoff's scheme, "the profits recorded over time on the customer statements were after-the-fact constructs that were based on stock movements that had already taken place, were rigged

to reflect a steady and upward trajectory in good times and bad, and were arbitrarily and unequally distributed among customers." *Id*. at 238. We also found that using the Last Statement Method would limit the total customer property fund pool and mean "that those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed." *Id*. But we noted that the Last Statement Method "may be appropriate when securities were actually purchased by the debtor, but then converted by the debtor" or "where . . . customers authorize or direct purchases of specific stocks." *Id*. With that said, we concluded that the Net Investment Method was "superior to the Last Statement Method as a matter of law," *id.* at 238 n.7, due to the "extraordinary facts" presented by the Madoff scheme—chief among them being that Madoff reported only fictitious returns to his customers. *Id*. at 238.

While recognizing that the Net Investment Method is appropriate for most BLMIS customers, Sage argues that the Last Statement Method is superior here because he, unlike other investors, "authorized or directed the securities purchases reflected in the Sage Associates account statements," which he argues is the dispositive factor under *Net Equity*, "regardless of whether those trades actually occurred or are fictitious." Appellant's Br. at 30. Sage effectively argues that the facts of his case satisfy *Net Equity*'s dicta regarding the kind of case in which the Last Statement Method would be appropriate because he is a customer that authorized or directed Madoff's purchase of specific stocks.

We are unpersuaded. Returning to *Net Equity*, a key element to this Court's reasoning there was the fact that the amounts reflected in BLMIS account statements were completely fictitious. The dispositive factor was that, in perpetrating a Ponzi scheme, Madoff never engaged in the represented market activity, and—like here—he authored after-the-fact account statements

6

in furtherance of the scheme. Indeed, Sage concedes this very point in Footnote 3 of his opening brief, where he states:

> Appellant does not, to be clear, contend that Madoff *in fact* purchased or sold the securities in Sage Associates account, or any account—only that Malcolm authorized or directed purchases of securities, as well as sales and trading strategy, and those authorizations and directions appeared to Malcolm and the Sages to have been followed by Madoff on the account statements reported to them.

Appellant's Br. at 11 n.3 (emphasis in the original). Thus, regardless of how detailed Sage's instructions to Madoff may have been, it is undisputed that those instructions never materialized into actual trades.

Even assuming that the Last Statement Method would be more appropriate in a case where no trades were executed, but the customer statements "mirrored what would have happened" had the customer's trading directions been followed, *Net Equity*, 654 F.3d at 242 (quoting *In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 74 (2d Cir. 2004)), the district court found that this was not such a case. In particular, the district court credited the testimony of Annette Bongiorno, Madoff's longtime assistant, that she personally entered backdated, fictitious trades in the Sage Accounts using historical pricing information.[2] Relying on this and other evidence, the district court found that the transactions in the Sage Accounts "were the product of Madoff's after-the-fact fabrications, not the directions and authorizations of Malcolm Sage." *Sage Realty*, 2022 WL 1125643, at *15. This finding was not clearly erroneous.

---

[2] Sage contends that he authorized or directed the trading in the Sage Associates account, not the Sage Realty account. He argues that the district court erroneously relied on evidence specific to the Sage Realty account in concluding that he did not authorize or direct trading in the Sage Associates account. *See* Appellant's Br. at 47–49. We disagree. The district court made ample findings regarding backdated trading in the Sage Associates account. *See Sage Realty*, 2022 WL 1125643, at *8–11.

7

As a result, the essential facts of this appeal are the same as those presented in *Net Equity*: it is the same Ponzi scheme, the same perpetrator, and the same method of generating fictitious account statements. In other words, these are the same "extraordinary facts" that we found warranted the Net Investment Method in the first instance. Under such clear precedent, the Net Investment Method should apply here as well. To find otherwise would permit the Sages to benefit at the literal expense of other defrauded BLMIS customers.

## II. The Sage Accounts Are De Facto Partnerships

Sage next argues that the district court erred in finding that the Sage Accounts were general partnerships, and—as a result—that Sage "was jointly and severally liable for his siblings' and other family members' withdrawals," because "[t]he evidence at trial established that the accounts were styled as partnerships because that ill-fitting description was the only one available" and "necessary for tax compliance." Appellant's Br. at 30–31. More importantly, Sage maintains that he and his siblings did not intend to form partnerships in the Sage Accounts, and that this fact is evidenced by the lack of a written partnership agreement, a traditional hallmark of a general partnership. Thus, while the Sage siblings used "account names under a common EIN," they did so "simply to provide a vehicle to report taxes on the account to the IRS . . . while permitting the individual investors in each account to invest separate capital in the account, and report and pay, their corresponding federal, state, and local taxes." *Id*. at 65.[3]

Under New York law, "[w]hen there is no written partnership agreement between the parties, the court must determine whether a partnership in fact existed from the conduct, intention,

---

[3] While Sage disputes the legal conclusions reached by the district court, he does not argue on appeal that the district court clearly erred in reaching its findings of fact. *See* Appellant's Reply Br. at 25 n.12 ("The question is one of application of law to fact . . . . Here, there is no factual dispute regarding the operation of Sage Associates, its tax filings, or distributions.").

and relationship between the parties." *Czernicki v. Lawniczak*, 74 A.D.3d 1121, 1124 (N.Y. App. Div. 2d Dep't 2010) (internal citations omitted). To do so, while courts consider the intentions of the parties, they also look to other factors, including the sharing of profits and losses, as well as the ownership, joint management, and control of partnership assets. *See Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (N.Y. App. Div. 2d Dep't 1988).

The Sages' conduct weighs in favor of finding that they constructively formed partnerships in the entities that held the Sage Accounts. First, the Sage siblings shared in the Sage Accounts' profits *and* losses. *See Sage Realty*, 2022 WL 1125643, at *16. Under New York Partnership Law, "[t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business." N.Y. P'ship Law § 11(4); *see Yador v. Mowatt,* No. 19-CV-04128 (EK) (RML), 2021 WL 4502442, at *2 (E.D.N.Y. Sept. 30, 2021) ("Profit sharing . . . constitutes prima facie evidence of the existence of a partnership."). The sharing of losses is also considered an "essential element" of a partnership. *Chanler v. Roberts*, 200 A.D.2d 489, 491 (N.Y. App. Div. 1st Dep't 1994). Moreover, each Sage sibling held an interest in the Sage Accounts and participated in managing them. *See Brodsky*, 138 A.D.2d at 663 (listing joint management and control as a feature of a partnership); *see also Sage Realty*, 2022 WL 1125643, at *30. Finally, it is undisputed that the Sages presented themselves to be partners via their tax returns, *see Sage Realty*, 2022 WL 1125643, at *29, and in New York, "parties are bound by the representations made in . . . partnership tax returns." *Czernicki*, 74 A.D.3d at 1125. The district court did not err in concluding that the entities that held the Sage Accounts were de facto partnerships, and that Defendants are jointly and severally liable for the judgment entered in the Trustee's favor.

We have considered Sage's other arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court. Pursuant to Rule 39 of the Federal Rules of Appellate Procedure, the costs of this appeal are taxed against the Defendant-Appellant.[4]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[4] Rule 39 of the Federal Rules of Appellate Procedure states, in relevant part, "if a judgment is affirmed, costs are taxed against the appellant." Fed. R. App. P. 39(a)(2).